**IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO**

**ECOFASTEN SOLAR, LLC, a Delaware
limited liability company,**

      **Plaintiff,**

**v.**                                    **Case No. 1:20-CV-1008**

**UNIRAC, INC., a New Mexico corporation,**

      **Defendant.**

## COMPLAINT

COMES NOW Plaintiff EcoFasten Solar, LLC, by and through its counsel of record, Kercsmar & Feltus PLLC (Sean J. O'Hara and Daniel P. Crane) and Hinkle Shanor, LLP (Kurt B. Gilbert), and for its complaint against defendant Unirac, Inc., alleges as follows:

## NATURE OF THE CASE

1.    This is a patent infringement action.  Plaintiff EcoFasten Solar, LLC ("EcoFasten") and defendant Unirac, Inc. ("Unirac") manufacture and market roof mounts for solar panels.  In the residential solar market, EcoFasten is a market leader that has developed innovative products that allow solar panels to be installed quickly and easily on roofs while avoiding the roof leaks and roof degradation associated with more traditional roof mounts.  EcoFasten has gained its status as a market leader through its careful development of unique, novel, and innovative inventions allowing for installation of solar panels on roofs while avoiding roof leaks and roof degradation associated with other solar panel roof mounts. EcoFasten's intellectual property is protected by valid U.S. Patents dating back as early as 2003.

2.    Unirac was previously a customer of EcoFasten, purchasing EcoFasten's mounting equipment for use with Unirac's rails that support solar panels above the roof and mounts.  More recently, Unirac began making, using, selling, and offering to sell roof mounts that misappropriate EcoFasten's novel and innovative patented inventions.  EcoFasten brings

2

this action to enjoin Unirac from infringing its patents and to recover damages adequate to compensate for infringement, including but not limited to a reasonable royalty.

## PARTIES, JURISDICTION, AND VENUE

3. EcoFasten Solar, LLC ("EcoFasten") is a Delaware limited liability company based in Phoenix, Arizona.

4. Upon information and belief, Unirac, Inc. is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico. Unirac also ships and sells products in, among other places, Bernalillo County, New Mexico.

5. As a result of Unirac's activity in New Mexico and principal place of business in New Mexico, this Court has personal jurisdiction over Unirac.

6. This Court has subject matter jurisdiction over EcoFasten's claims under 28 U.S.C. §§ 1331 and 1338(a) because this action is for patent infringement and arises under the patent laws of the United States, Title 35, Sections 271 et seq. of the United States Code.

7. Venue is proper in the United States District Court for the District of New Mexico under 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to EcoFasten's claims occurred in this District.

## GENERAL ALLEGATIONS

**EcoFasten invents novel roof mounts for snow guards and solar panels.**

8. In the 1990s, Brian C. Stearns was a roofer specializing in slate roofs, working primarily in New England.

9. Mr. Stearns frequently installed snow guards on roofs to prevent snow from falling off roofs in large quantities, which can cause property damage and personal injury.

10. Installation of snow guards typically involves drilling holes in the roof in order to mount the guard. Holes naturally increase a roof's susceptibility to leaks.

11. Mr. Stearns observed a need for a new kind of roof mount that would be substantially leak proof. He began experimenting with and implementing possible solutions.

12. Ultimately, Mr. Stearns (along with other inventors) developed various unique leak-proof roof mounts.

3

13.   One such invention by Mr. Stearns, with co-inventor Douglas Lounsbury, is described in the duly and legally issued U.S. Patent No. 10,763,777 (the "'777 Patent"). The '777 Patent includes in relevant part the following claims:

1.   A roof mount assembly comprising:

a flashing including a top surface, a bottom surface, and an upwardly extending projection with the flashing defining a first aperture extending through the upwardly extending projection between the top surface and the bottom surface;

a preformed rubber seal including a first end portion forming a first circular disk having a first planar end surface, a second end portion forming a second circular disk having a second planar end surface, and a central portion between the first end portion and the second end portion, the preformed rubber seal defining a cylindrical second aperture centrally located in the preformed rubber seal and extending from the first planar end surface to the second planar end surface;

an L-shaped bracket supportable on the flashing, the L-shaped bracket including an elongate body portion defining a third aperture and a flange defining a fourth aperture sized to receive the preformed rubber seal and the upwardly extending projection, the fourth aperture including a first aperture portion having a first cylindrical shape and defining a first diameter and a second aperture portion having a second cylindrical shape and defining a second diameter that is less than the first diameter;

a washer including a polymeric compression portion and a rigid backing portion and defining a fifth aperture; and

a screw including a head and extending through the first aperture, the cylindrical second aperture, the fourth aperture, and the fifth aperture, to secure the L-shaped bracket and the flashing and inhibit fluid flow through the first aperture.

. . .

3.   The roof mount assembly of claim 1, wherein the third aperture of the L-shaped bracket is sized to receive a second fastener to support a solar panel.

14.   The '777 Patent has been validly assigned to EcoFasten. A copy of the '777 Patent is attached as Exhibit 1.

15.   Mr. Stearns along with co-inventor Alexander Bornemann invented other roof mounts. One of these inventions by Mr. Stearns and Mr. Bornemann is described in the duly and legally issued U.S. Patent No. 10,676,929 (the "'929 Patent"). The '929 Patent includes in relevant part the following claims:

1.  A mount assembly, comprising:

a base comprising a pair of flanges extending longitudinally along the base, and a central portion between the pair of flanges;

a standoff positionable on the central portion of the base, the standoff secured to the base with a fastener, wherein a height of the standoff is adjustable;

a tile flashing above the base and the standoff, the tile flashing including a first aperture;

a bracket having a second aperture, wherein the bracket is installable on the tile flashing and is supported by the standoff; and

a preformed rubber seal having a first end portion, a second end portion and a middle portion, the preformed rubber seal defining a third aperture through the first end portion, the second end portion and the middle portion,

wherein the first aperture, the second aperture and the third aperture are concentrically aligned.

. . .

10.    A tile mount assembly, comprising:

a base comprising a pair of flanges including a first flange and a second flange that extend longitudinally along the base, and a base central portion between the first flange and the second flange,

a standoff comprising a top surface, the standoff is coupled to and supported by the base central portion;

a tile flashing comprising an embossed portion installable on the base and the standoff, the tile flashing defining a first aperture wherein the top surface of the standoff aligns with the embossed portion of the tile flashing;

a bracket having a second aperture, wherein the bracket is installable on the embossed portion of the tile flashing and is supported by the standoff; and

a rubber seal comprising a first end portion having a first diameter, a second end portion having a second diameter, and a seal central portion having a third diameter between the first end portion and the second end portion, the rubber seal defining a third aperture through the first end portion the seal central portion, and the second end portion,

wherein the third diameter is less than the first and second diameters forming a notch between the first end portion and the second end portion, and

wherein the first aperture, the second aperture and the third aperture are concentrically aligned in the tile mount assembly.

11.    The tile mount assembly of claim 10, wherein a height of the standoff is adjustable.

12.    The tile mount assembly of claim 10, wherein the bracket is configured to support a solar panel support structure and a solar panel.

16.    The '929 Patent has been validly assigned to EcoFasten.  A copy of the '929 Patent is attached as Exhibit 2. The '777 Patent and the '929 Patent are collectively referred to in this Complaint as the Patents.

**Unirac infringes the EcoFasten Patents.**

17.    Although Unirac was formerly a customer of EcoFasten, in 2018 Unirac abruptly breached its contractual relationship with EcoFasten, which is the subject of another lawsuit filed with the United States District Court in and for the State of Arizona at cause number 2:19-cv-05750-MTL, and began making, using, selling, and offering to sell products that infringed on the Patents.  Specifically, Unirac began selling its FlashKit Pro, FlashKit TR, SFM FlashKit TR, and FlashKit SFM Comp Mount products (the "Accused Products").

18.    The Accused Products directly compete with and are nearly identical to products made by EcoFasten including, but not limited to, EcoFasten's GreenFasten™ GF1 ("GF1") and EcoFasten's Tile Flashing System.



**Figure 1 – EcoFasten's GF1.**



**Figure 2 – EcoFasten's Tile Flashing System.**



**Figure 3 – FlashKit Pro in process of assembly.**

19.     The FlashKit Pro is nearly identical to the GF1 and directly infringes on the'777 Patent.

20.     For example, the FlashKit Pro is a roof mount assembly with several components meeting all the limitations of claim 1 of the '777 Patent.  It contains a flashing including a top surface, a bottom surface, and an upwardly extending projection with the flashing defining a first aperture extending through the upwardly extending projection between the top surface and the bottom surface.

21.    It has a preformed rubber seal including a first end portion forming a first circular disk having a first planar end surface, a second end portion forming a second circular disk having a second planar end surface, and a central portion between the first end portion and the second end portion, the preformed rubber seal defining a cylindrical second aperture centrally located in the preformed rubber seal and extending from the first planar end surface to the second planar end surface

22.    It has an L-shaped bracket supportable on the flashing, the L-shaped bracket including an elongate body portion defining a third aperture and a flange defining a fourth aperture sized to receive the preformed rubber seal and the upwardly extending projection, the fourth aperture including a first aperture portion having a first cylindrical shape and defining a first diameter and a second aperture portion having a second cylindrical shape and defining a second diameter that is less than the first diameter.

23.    The FlashKit Pro has a washer including a polymeric compression portion and a rigid backing portion and defining a fifth aperture.

24.    It has aa screw including a head and extending through the first aperture, the cylindrical second aperture, the fourth aperture, and the fifth aperture, to secure the L-shaped bracket and the flashing and inhibit fluid flow through the first aperture.



**Figure 4 – FlashKit Pro assembled.**

8

25.    As another example, claim 3 of the '777 Patent requires all of the limitations of claim 1 with the further limitation that the assembly is designed to receive support for solar panels – as FlashKit Pro is clearly meant to do.



**Figure 5 – FlashKit Pro with solar panels.**

26.    Additional allegations showing infringement of the '777 Patent are shown in Exhibit 3, which is incorporated by reference as if fully set forth herein.

27.    The similarly configured FlashKit SFM Mount also infringes on the '777 Patent, as shown in Exhibit 4, which is incorporated by reference as if fully set forth herein.

28.    Upon information and belief, the FlashKit Pro and the FlashKit SFM Mount also infringe on other claims of the '777 Patent in addition to the claims detailed above.

29.    Unirac's FlashKit TR directly infringes on the '929 Patent.

30.    As evidenced by the picture of the FlashKit TR below, the FlashKit TR meets each and every limitation of claim 10 of the '929 Patent.  The FlashKit TR is a tile mount assembly comprised of:  (1) a base plate with flanges extending horizontally/longitudinally along the base from a central portion; (2) a tiered riser that is a standoff, which is coupled to the base plate through a riser bolt; (3) a tile replacement flashing is then fastened to the top of the tiered riser.  The tile flashing has an aperture that lines up with an aperture on the tiered riser as well as with the L-bracket.  As with the FlashKit Pro, the L-bracket contains a rubber seal with varying-sized ends, with a smaller, central portion to the seal.



**Figure 6 – FlashKit TR disassembled.**

31.    As a further example, claim 12 of the '929 Patent requires all of the limitations of claim 10 with the further limitation "wherein the bracket is configured to support a solar panel support structure and a solar panel."  The FlashKit TR is meant to attach solar panels to a roof or structure, meeting the further limitation of claim 12.

32.    Additional allegations showing infringement of the '929 Patent are shown in Exhibit 5, which is incorporated by reference as if fully set forth herein.

33.    The similarly configured SFM FlashKit TR also infringes on the '929 Patent, as also shown in Exhibit 5.

34.    Upon information and belief, the FlashKit TR and SFM FlashKit TR infringe on other claims of the '929 Patent in addition to the claims detailed above.

<strong>COUNT I: INFRINGEMENT OF THE '929 PATENT</strong>

35.    EcoFasten incorporates the foregoing paragraphs by reference.

36.    The '929 Patent is valid and enforceable.

37.    Unirac has, without authority, consent, right, or license, and in direct infringement of the '929 Patent, made, used, offered for sale, and/or sold apparatuses protected by the '929 Patent.

38.    EcoFasten has no adequate remedy at law for the harm caused by Unirac's acts.

39.    EcoFasten has suffered monetary damages in an amount to be proven at trial.

40.    EcoFasten is entitled to an accounting by Unirac of funds comprising all revenues received through the commercial exploitation of its infringing products, the imposition of a constructive trust for the benefit of EcoFasten for all such funds in the custody or control of Unirac, the assessment of a reasonable royalty for Unirac's use of EcoFasten's invention, and to all other damages to which EcoFasten may be entitled.

## COUNT II: INFRINGEMENT OF THE '777 PATENT

41.    EcoFasten incorporates the foregoing paragraphs by reference.

42.    The '777 Patent is valid and enforceable.

43.    Unirac has, without authority, consent, right, or license, and in direct infringement of the '777 Patent, made, used, offered for sale, and/or sold apparatuses protected by the '777 Patent.

44.    EcoFasten has no adequate remedy at law for the harm caused by Unirac's acts.

45.    EcoFasten has suffered monetary damages in an amount to be proven at trial.

46.    EcoFasten is entitled to an accounting by Unirac of funds comprising all revenues received through the commercial exploitation of its infringing products, the imposition of a constructive trust for the benefit of EcoFasten for all such funds in the custody or control of Unirac, the assessment of a reasonable royalty for Unirac's use of EcoFasten's invention, and to all other damages to which EcoFasten may be entitled.

WHEREFORE, EcoFasten prays for relief and judgment against Unirac, as follows:

A.    For a judicial determination and a declaration that the Patents are valid and enforceable;

B.    For a preliminary and then permanent injunction issued against Unirac, its agents, officers, directors, employees, attorneys, successors, and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of Unirac, or in active concert, participation, or combination with them, including customers and distributors, prohibiting Unirac from:

i.    Continuing acts of infringement of the Patents;

11

      ii.      Making, using, selling, and/or importing infringing products, to include any colorable imitation thereof; and

      iii.      Otherwise infringing up the Patents;

C.      A judicial determination and a declaration that Unirac has infringed the Patents under 35 U.S.C. § 271, and final judgment incorporating the same;

D.      That an Order issue from this Court requiring Unirac, its officers, agents, servants and employees, to deliver up to this Court for destruction all articles and materials infringing upon the Patents and all materials for reproducing such infringing products;

E.      That Unirac be required to file with the Court within thirty (30) days after entry of an injunctive order or final judgment a written statement under oath setting forth the manner in which Unirac has complied with the order or final judgment;

F.      Directing Unirac to account for, and awarding to EcoFasten, all gains and profits realized through, and damages caused by, Unirac's manufacture, production, distribution, circulation, sale, offering for sale, advertising, promotion or display of its products infringing upon the Patents, and Unirac's total profit realized thereby;

G.      Awarding EcoFasten its damages sustained due to Unirac's infringement of the Patents;

H.      In the alternative, that a reasonable royalty for Unirac's infringement be awarded to EcoFasten pursuant to 35 U.S.C. § 284;

I.      That, due to the brazenness of Unirac's infringement, Unirac be ordered to pay EcoFasten's reasonable attorneys' fees and experts' fees pursuant to 35 U.S.C. § 285;

J.      An award of the costs of this action, including pre- and post-judgment interest, pursuant to 35 U.S.C. § 284; and

K.      For such other and further relief as this Court deems necessary, just and proper under the circumstances.

DATED this 2nd day of October, 2020.

Respectfully submitted,

HINKLE SHANOR LLP

By: /s/ Kurt B. Gilbert
Kurt B. Gilbert
P.O. Box 2068
Santa Fe, NM 87504
Telephone (505) 982-4554
Fax (505) 982-8623
kgilbert@hinklelawfirm.com

and

KERCSMAR & FELTUS PLLC
Sean J. O'Hara
Daniel P. Crane
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
sjo@kflawaz.com
dpc@kflawaz.com
(480) 421-1001 (Telephone)
(480) 421-1002 (Facsimile)

*Attorneys for Plaintiff EcoFasten Solar, LLC*

13